COSMAN, APPELLANT, *v.* CHESTNUT VALLEY IRRIGA-
TION DISTRICT ET AL., RESPONDENTS.

(No. 5,731.)

(Submitted June 26, 1925. Decided July 14, 1925.)

[238 Pac. 879.]

*Irrigation Districts—Bonded Indebtedness—Special Assess-
ments—Delinquencies—Lands Taxable until Entire Indebt-
edness Paid.*

Irrigation Districts—Bonds—Delinquencies in Payment of Assessments
—Extent of Liability of Land Owners.
    1. *Held,* under the irrigation district statute (secs. 7166 *et seq.,*
Rev. Codes 1921) that the bonds of an irrigation district—a
public corporation—create a general indebtedness against the dis-
trict in the sense that all the lands therein are taxable for the
payment of the bonds and interest until the entire indebtedness
is paid, and that therefore the lands of an owner who has paid
his assessment are not released from liability for further assess-
ments made necessary by delinquencies of others, until the bonded
indebtedness with interest is discharged in full.

Same—Effect of Delinquencies on Owners of Land Who Pay Assess-
ments.
    2. Since the proceeds of sales of lands of delinquents in the
payment of irrigation district assessments inure to the benefit of
the district and the owner of land who pays his assessments is
presumed to derive some benefit from the success of the district
as a whole, an assessment on owners who paid their *pro rata* tax
to cover delinquencies of defaulting owners, *held* not open to the
charge that it would be out of all proportions to the benefits
received and thus amount to virtual confiscation or a taking of
property without due process of law.

Eminent Domain, 20 C. J., sec. 17, p. 259, n. 1.
Waters, 40 Cyc., p. 824, n. 51.

*Appeal from District Court, Cascade County; H. H. Ewing,
Judge.*

ACTION by W. H. Cosman against the Chestnut Valley
Irrigation District and others. From a judgment of dis-
missal, plaintiff appeals. Affirmed.

*Messrs. Cooper, Stephenson & Hoover,* for Appellant, sub-
mitted a brief; *Mr. W. H. Hoover* argued the cause orally.

*Messrs. Gunn, Rasch & Hall* and *Mr. Ralph E. Bancroft,* for Respondents, submitted a brief; *Mr. M. S. Gunn* argued the cause orally.

HONORABLE THEODORE LENTZ, District Judge, sitting in place of MR. CHIEF JUSTICE CALLAWAY, absent on account of illness, delivered the opinion of the court.

In the complaint in this action it is alleged, among other things, that the plaintiff is the owner of land in the Chestnut Valley irrigation district; that the district has regularly issued and sold its bonds in the sum of $140,000; that in conformity with the statutory requirements the board of commissioners levied a tax for the year 1922 sufficient in amount to pay the interest on the bonds for the year 1923; that plaintiff paid the full amount levied upon his lands, but because of delinquencies of other land owners in the payment of their assessments there was not sufficient money available to pay the said interest in full; that the lands upon which the assessment went delinquent were sold for county and district taxes in the manner provided by law, and the county treasurer issued to the commissioners of the district debenture certificates for the amount of the delinquent taxes; that the total assessment of unpaid interest for 1923 amounted to $4,200, and that the board of commissioners, conceiving it to be their duty under section 7232, Revised Codes of 1921, issued warrants for said sum, drawn against the next district tax assessment and threaten to levy an assessment to pay said warrants; that because of delinquencies in the payment of the assessments again occurring, an insufficient amount was collected to pay the interest falling due on the bonds for the year 1924, the deficiency amounting to about the same as for the year 1923; and that the district commissioners threaten to make another issue of warrants drawn against the 1925 tax or assessment for the payment of such delinquent interest. Plaintiff asks that the

district commissioners be enjoined from levying a tax or assessment against the lands of the plaintiff for the payment of the warrants already issued, and from issuing warrants to pay the delinquent interest maturing in 1924. A general demurrer to the complaint was sustained in the lower court. Plaintiff, having elected to stand upon the complaint, allowed a judgment of dismissal to be entered, from which judgment this appeal is prosecuted.

The question for decision is this: May the owners of [1] lands in an irrigation district organized under the laws of this state who have paid the first proportional assessment against their lands be subjected to a later proportional assessment for the payment of delinquent interest on outstanding bonds, the delinquency being caused by the failure of part of the district land owners to pay the assessment levied against their lands? · Or, putting it another way: Do the bonds of an irrigation district create a general obligation against the district in the sense that all the lands within the district are taxable for the payment of the said bonds and interest until the entire indebtedness is paid?

Plaintiff contends that the statute, by its own terms and general design, does not command the issuance and payment of the warrants; that since the tax is a special assessment, it therefore follows that each land owner within the district is taxable for the payment of only such proportion of the bonded indebtedness as his land bears to the entire irrigable area within the district, and that when such proportional payment is made his lands are fully and finally released from any further lien of the bonded indebtedness.

Section 7169 of the Act provides in part as follows: "Every irrigation district so established hereunder is hereby declared to be a public corporation for the promotion of the public welfare, and the lands included therein shall constitute all the taxable and assessable property of such district for the purposes of this Act."

Section 7210 requires the board of commissioners of a district upon the presentation of a proper petition "by' appropriate order or resolution," to "authorize. and direct the issuance of the bonds of the district" and to "provide for the levy of a special tax or assessment as in this Act provided on all the lands in the district for the irrigation and benefit of which said district was organized and said bonds are issued * * * sufficient in amount to pay the interest on and principal of said bond when due."

Section 7213 provides: "All bonds issued hereunder * * * shall be a lien upon all the lands originally or at any time included in the district for the irrigation and benefit of which said irrigation district was organized and said bonds were issued *. * * and all such lands shall be subject to a special tax or assessment for the payment of the interest on and principal of said bonds; * * * and said special tax or assessment shall constitute a first and prior lien on the land against which levied, to the same extent and with like force and effect as taxes levied for state and county purposes."

Section 7232 provides that "All bonds and the interest thereon issued hereunder * * * shall be paid by revenue derived from a special tax or assessment levied as hereinafter provided upon all the lands included in the district * * * and all the lands in the district at the time said bonds are issued, and all lands subsequently included which are so chargeable under the provisions of this Act, shall be and remain liable to be taxed and assessed for the payment of said bonds and interest." This section further provides that "It shall be the duty of the board of commissioners of the district, in the order or resolution authorizing and directing the issuance of bonds of the district mentioned in section 7210, to provide for the annual levy and collection of a special tax or assessment upon all the lands included in the district and subject to taxation and assess-

ment as aforesaid, sufficient in amount to meet the interest on said bonds promptly when and as the same accrues, and to discharge the principal thereof at their maturity, or respective maturities." It is further provided in this section as follows: "In the event that for any reason any special tax or assessment hereinabove provided for cannot or shall not be levied and collected in time to meet any interest falling due on any bonds issued hereunder, then the board of commissioners shall have the power and authority, and it shall be their duty, to provide for and pay such interest when due, either out of any of the funds in hand in the treasury of the district not otherwise appropriated, or by warrants (which may bear interest at a rate not to exceed six per centum per annum) drawn against the next district tax or assessment levied or to be levied. Said warrants shall be in addition to those mentioned in section 7208."

It will be noted from the foregoing that it is reiterated in the several sections of the Act that payment of bonds is secured by a lien *upon all the lands in the district,* and that the duty is enjoined upon the commissioners to levy an annual tax or assessment *sufficient in amount* to meet the interest on said bonds promptly, and to discharge the principal at maturity. Now, the commissioners, if they are to make a levy *sufficient in amount* to meet the maturing obligations of said bonds, must of necessity take into consideration the delinquencies which inevitably occur in every system of taxation; hence the levy must always be for an amount somewhat larger than the payments which the law says must be made, the necessary margin depending upon an estimate of the amount of the delinquencies. (*Hughson* v. *Crane*, 115 Cal. 404, 47 Pac. 120.) But it will be noted from the provisions of section 7232 that if from any reason any assessment cannot or shall not be collected in time to meet any interest payments falling due, it is the duty of

the commissioners to pay the interest out of any funds in the treasury of the district not otherwise appropriated or by interest-bearing warrants drawn against the next district tax or assessment.

The foregoing and other provisions of the statute clearly indicate an intention that the bonded indebtedness shall be a charge against all the lands in the district, and that all the lands in the district shall be taxed *pro rata* by irrigable acreage until the bonded indebtedness is fully discharged, regardless of delinquencies. That this is a correct interpretation of the legislative intent is fully confirmed when we recall that in 1917 an amendment was added to section 7213, which provided, in substance, that the lien of the bond issue should be specifically apportioned to each forty-acre tract, and each parcel of land separately owned, and that on the payment of the assessment levied against any particular tract or parcel of land, "thereupon said tract or tracts of land so paid upon in full shall be discharged from the lien of said bonds and further assessments or interest thereon." (Sec. 8, Chap. 153, Laws of the Fifteenth Legislative Assembly.) As thus amended, the statute clearly provided in specific terms the very thing which plaintiff now contends is in the law; but in 1919 the legislature saw fit to repeal the amendment of 1917 so that as it now stands, and as it stood prior to the enactment of the amendment, it contains no provision whereby a land owner can, by paying his *pro rata* share of the assessment for his lands, be released from the lien of the bonded indebtedness, as is the case with drainage districts and city improvement districts. (Sec. 6, Chap. 116, Laws of the Sixteenth Legislative Assembly.) By repealing the amendment of 1917, the legislature showed clearly its intention that no lands be released from the lien until the bonded indebtedness is discharged in full.

Plaintiff maintains that to place such an interpretation upon the statute is tantamount to pronouncing it invalid, for

the reason that it then contravenes the state and federal constitutional inhibitions against depriving a man of his property without due process of law and the taking of property without just compensation.

An irrigation district is in the nature of a special im-
[2] provement district, and, of course, has no authority to levy general taxes, its power in that regard being limited to what is known as special assessments. A special assessment is in the nature of a tax upon property levied according to benefits conferred on the property. (1 Cooley on Taxation, 105.) The justification and authority for levying special assessments is derived from the benefits which the expenditure of the tax or assessment confers on the owners of the lands in the special assessment district, and a tax out of all proportion to the benefits conferred could not be sustained. The supreme court of the United States, in *Norwood* v. *Baker*, 172 U. S. 269, 43 L. Ed. 443, 19 Sup. Ct. Rep. 187 [see, also, Rose's U. S. Notes], declares the rule: "The principle underlying special assessments to meet the cost of public improvements is that the property upon which they are imposed is peculiarly benefited, and therefore the owners do not, in fact, pay anything in excess of what they receive by reason of such improvement. * * * The exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him is, to the extent of such excess, a taking, under the guise of taxation, of private property for public use without compensation. We say 'substantial excess,' because exact equality of taxation is not always attainable, and for that reason the excess of cost over special benefits, unless it be of a material character, ought not to be regarded by a court of equity when its aid is invoked to restrain the enforcement of a special assessment."

In *McCormack* v. *Patchin,* 53 Mo. 33, 14 Am. Rep. 440, the court said: "The whole theory of local taxation or assessments is, that the improvements, for which they are levied, afford a remuneration in the way of benefits. A law which would attempt to make one person or a given number of persons, under the guise of local assessments, pay a general revenue for the public at large, would not be an exercise of the taxing power, but an act of confiscation. In effect it would be transferring the property of one individual to another. These are legal truisms which have long been entertained and firmly established."

Plaintiff insists that if the faithful taxpayer must be assessed in amount sufficient to cover the delinquencies of his neighbors, his assessment will be so out of proportion to the benefits received as to constitute a violation of the principle above stated, and hence a taking of his property without due process of law and without just compensation. But plaintiff apparently loses sight of the fact that when lands are sold for delinquent assessments, the proceeds of the sale pass to the credit of the irrigation district. This money may be used in paying bonded indebtedness and thus reduces the plaintiff's next assessment. If the land is struck off to the county, the irrigation district receives a debenture certificate showing the amount of its delinquent tax and its equitable interest in the land, legal title to which is in the county. Plaintiff thus is presumed to receive back in money, or in an interest of the irrigation district in the lands sold for delinquent taxes, approximately the amount which was added to his assessment to make up the delinquent taxes, and it cannot be said that his assessment is out of proportion to the benefits received.

Since the law provides that an irrigation district is a public corporation for the promotion of the public welfare (sec. 7169, Rev. Codes 1921) it follows that the servitudes imposed by such a corporation upon real property

are for the public use. Hence, the legislature has a wide latitude in prescribing the method under which the taxes or assessments of such a corporation may be levied and collected, and it cannot be said that it has exceeded its power in providing for the imposition of additional assessments sufficient in amount to cover the delinquencies. In the very nature of things delinquencies will occur in any scheme of taxation, and the power to make levies sufficient to meet these delinquencies is a necessary incident to the power to impose a tax or assessment.

The faithful taxpayer will be presumed to receive some benefit from the added success of the district as a whole, which might otherwise be imperiled if the delinquencies were not met. Although referring to general taxes, we think the remarks of Chief Justice Dixon, in *State* v. *Common Council*, 15 Wis. 30, are pertinent here: "Nor is it of any importance in a legal point of view, that many of the citizens have contributed their full proportions of the money which should have been applied in payment of these debts, whilst others have refused, it matters not whether rightfully or wrongfully. It seems oppressive, and is, in some respects, no doubt, a great hardship, that those who are diligent and prompt in the discharge of their obligations to the public should be compelled to suffer on account of the delinquencies of others, occasioned sometimes by the mistakes of the officers of the law, or, it may be, of the legislature, but more frequently the fault of the delinquents themselves. It is an evil inseparable from every system of taxation, a subject always difficult and never free from vices and imperfection—a misfortune which must ever attend those who dwell in communities where any are unwilling to bear their just share of the public burdens. In such affairs, the taxpayers are, as it were, sureties for one another. What one gains by accident or fraud, the other must lose. No deductions are ever made from the public revenues for such

causes. The deficiencies of one year must be made up the next, and diverted funds restored. If these inequalities, often inevitable, were to constitute an excuse for the nonpayment of taxes, public faith would be at an end, and government must cease."

Although the courts are not agreed upon the question, we think the position we have taken in this matter is sustained by the better reasoned cases and by the weight of authority. As stated in the case of *In re Crow Creek Irr. Dist.*, 63 Mont. 293, 207 Pac. 121: "In its general legislative plan, our statute is modeled after the Wright Law of California (*O'Neill* v. *Yellowstone Irr. Dist.*, 44 Mont. 492, 121 Pac. 283), the constitutionality of which has been established by numerous decisions of the California court and by the decision of the supreme court of the United States in *Fallbrook Irr. Dist.* v. *Bradley*, 164 U. S. 112, 41 L. Ed. 369, 17 Sup. Ct. Rep. 56 [see, also, Rose's U. S. Notes]."

The Wright Law, when before the supreme court of the United States in the *Fallbrook Case, supra,* provided for *ad valorem* assessments on the lands within the district, and the court, while assuming that the basis for the authority to make special assessments was the benefit conferred, and that assessments should be in proportion to benefits, held that the Act as a whole was not such a departure from that principle as to constitute taking of property without due process of law, as prohibited by the Fourteenth Amendment to the federal Constitution. In the course of the opinion the court said: "Assume that the only theory of these assessments for local improvements upon which they can stand is that they are imposed on account of the benefits received, and that no land ought in justice to be assessed for a greater sum than the benefits received by it, yet it is plain that the fact of the amount of benefits is not susceptible of that accurate determination which appertains to a demonstration in geometry. Some means of arriving at this amount must

be used, and the same method may be more or less ac-
curate in different cases involving different facts. Some
choice is to be made, and where the fact of some benefit
accruing to all the lands has been legally found, can it
be that the adoption of an *ad valorem* method of assessing
the lands is to be held a violation of the federal Constitu-
tion? It seems to us clearly not. It is one of those mat-
ters of detail in arriving at the proper and fair amount and
proportion of the tax that is to be levied on the land with
regard to the benefits it has received, which is open to the
discretion of the state legislature, and with which this court
ought to have nothing to do. The way of arriving at the
amount may be in some instances inequitable and unequal,
but that is far from rising to the level of a constitutional
problem and far from a case of taking property without
due process of law." (*Fallbrook Irr. Dist.* v. *Bradley,
supra.*)

The irrigation district laws of the different western states,
in their general plan, are similar so far as the question
involved here is concerned. Only one state, so far as we
have been able to determine, has held unequivocally that
the bonds of an irrigation district do not create a general
obligation.

In *Interstate Trust Co.* v. *Montezuma Valley Irr. Dist.*, 66
Colo. 219, 181 Pac. 123, the supreme court of Colorado held
as follows: "Neither the clause relied upon by plaintiff, nor
the Act taken as a whole, viewed from any angle, contem-
plates that the property of one land owner shall become
liable for the assessments upon other lands where the own-
ers fail to refuse to pay. The assessment is not based upon
the value of the land in the district as a whole, but is ap-
portioned ratably upon irrigable land only, according to
benefits, in conformity with the law of special assessments,
under which the district, through a majority, may include
land against the will of its owner. To hold that one owner

is liable for the assessments due for benefits conferred upon the land of his neighbor would be violative of both state and federal constitutions, and for this reason alone the argument against the contention of plaintiff should be conclusive. A construction of this Act which charges the property of a faithful few with the payment of the entire cost of the project is manifestly contrary to the purpose and spirit of the Act, and cannot be legally upheld on any theory. Such a rule would be fundamentally wrong, and subversive of every legal principle governing assessments for local improvements."

About a year prior to the date of the above decision, the Colorado law was before the United States circuit court of appeals for the eighth circuit, in the case of *Norris* v. *Montezuma Valley Irr. Dist.*, 248 Fed. 369, 160 C. C. A. 379, in which the holding was directly opposite to that of the supreme court of Colorado. In that case the court said: "The scheme disclosed by these statutes relating to irrigation districts looks to uniformity of assessment per acre for the payment of the district's indebtedness, but they also provide that the 'bonds, and the interest thereon, shall be paid by revenue derived from an annual assessment upon the real property of the district, and the real property of the district shall be and remain liable to be assessed for such payments as herein provided'; also, the county board are 'to fix the rate necessary to provide the amount of money required to pay the interest and principal of the bonds of said district as the same shall become due.' (Secs. 3456, 3459.) In order to give to these statutes the construction contended for by defendants in error, it is necessary to read into them a provision that there shall be paid on the bonds only so much as the annual levy shall produce in money collected, whereas the statute is peremptory that the bonds and interest shall be paid, and the remaining provisions only indicate the source and mode of obtaining

the fund. In order to give full force and effect to every portion of the statute there must not only be an assess-ment and levy, but the debt must be paid. A statutory obligation of a municipal corporation or *quasi*-municipal cor-poration to pay its debt, or to fix a rate of levy necessary to provide the amount of money required to pay its debt, is not satisfied by an assessment and rate of levy sufficient to pay the debt if the taxes are collected, but requires that there be a sufficient assessment and levy and collection of the taxes as levied to actually pay the debt.''

The same question was before the supreme court of Wash-ington in *State ex rel. Clancy* v. *Columbia Irr. Dist.*, 121 Wash. 79, 208 Pac. 27, where it was held: ''That the obli-gation is a general one has been assumed by all courts which have had occasion to pass upon the question, either directly or indirectly, until the recent decision of *Inter-state Co.* v. *Montezuma District*, 66 Colo. 219, 181 Pac. 123. In that case the supreme court of Colorado decided that the property of one land owner could not be made liable for delinquencies arising from refusal to pay assess-ments on other lands, and that the delinquencies of one year could not be carried to the next year as against prop-erty which had paid its assessments previously incurred, and that the obligation is in fact a severable one. The opinion overlooks the fact that no attempt is made to segre-gate the obligation at the time it is created, and in fact there is no provision made in the Acts for a segregation at any time. The Acts by their terms bind the districts as a whole to pay their obligations, and in our opinion the decision of the Colorado court would defeat the purpose of the law, as money could not be secured to build irrigation projects with the very indefinite security which would thus be afforded. It is our conclusion that the obligation is a general one, and that all lands within the district are sub-

jeet to taxation for the payment of the entire obligation.''

The supreme court of Idaho in the recent case of *American Falls Reservoir Dist.* v. *Thrall,* 39 Idaho, 105, 228 Pac. 236, decided the same question in accord with the supreme court of Washington, and in the opinion said: ''The Idaho Act contains no provision for the segregation of a district's bonded obligation against any particular tract or subdivision within the district. If it be contended that the assessment for benefits and apportionment for costs is intended to be such a segregation and to limit the liability of the owner to the amount assessed against his land, it may be replied that no method is provided for the enforcement of the lien against the separate subdivisions. If the holders of irrigation district bonds can enforce payment of the same only by foreclosure proceedings against each particular tract or subdivision within the district for the amount assessed against it, it would defeat the purpose of the statute. * * * It will be noted that there is a wide difference beetween the method pointed out by the statute for the payment of special district improvement bonds such as paving, sewer, sidewalk, and the like, wherein the amount of such bonds is specifically segregated and apportioned to each separate subdivision, and the owner of any land within such district has the option to pay the entire assessment against his property and upon doing so to have it released from further liability under such bond issue. No similar provision is found in the irrigation district law, but on the contrary it is expressly provided that 'all the land in the district shall be and remain liable to be assessed for such payment.' ''

In the case of *Nelson* v. *Board of Commrs.*, 62 Utah, 218, 218 Pac. 952, the supreme court of Utah had under consideration the irrigation district law of that state, which provides that a levy of fifteen per cent may be made to

cover delinquencies. The court was called upon to decide whether a levy in excess of fifteen per cent to cover delinquencies in prior years could be made, and it was held that, since the statute limited the amount of the levy for delinquencies to fifteen per cent no levy in excess of that amount could be made. The court in its opinion said that it approved the reasoning of the supreme court of Colorado in *Interstate Trust Co.* v. *Montezuma Valley Irr. Dist.*, 66 Colo. 219, 181 Pac. 123, *supra,* but it will readily be seen that, in approving any levy at all, the decision is in support of the opposite theory. We can see no difference in principle between a levy of fifteen per cent to cover delinquencies and a levy of whatever amount may be required for that purpose. The only theory upon which any levy may be made to cover delinquencies is that the indebtedness constitutes a general obligation against the district for the payment of which all of the lands are chargeable, and that each individual tract of land will thereby receive a commensurate benefit of such proportion that in being required to pay the tax, the land owner is not being deprived of his property without just compensation.

For the foregoing reasons the judgment is affirmed.

*Affirmed.*

ASSOCIATE JUSTICES HOLLOWAY, GALEN, STARK and MATTHEWS concur.