(November 20, 1915.)

## NAMPA & MERIDIAN IRRIGATION DISTRICT, Respondent, v. JAS. G. PETRIE et al., Appellants.

[153 Pac. 425.]

IRRIGATION DISTRICTS—CONFIRMATION OF PROCEEDINGS—POWER OF DISTRICT TO CONTRACT FOR ADDITIONAL WATER SUPPLY—POWER OF DISTRICT TO PROVIDE DRAINAGE SYSTEM — CONTRACT WITH UNITED STATES FOR ADDITIONAL WATER SUPPLY AND JOINT CONSTRUCTION OF DRAINAGE SYSTEM—POWER OF DISTRICT AND SECRETARY OF INTERIOR TO CONTRACT—ASSESSMENT OF BENEFITS—CONFIRMATION OF PROCEEDINGS NOT ADJUDICATION AS TO BENEFITS — GOVERNMENT RULES AND REGULATIONS — LIMITATION OF USE OF WATER ON RECLAMATION PROJECT TO 160 ACRES.

1.   Sec. 2401, Rev. Codes, under title 14, "Irrigation Districts," authorizes special statutory proceedings, which may be brought by the board of directors of an irrigation district in the district court to determine the validity of the successive steps taken under the provisions of this title for the purpose of authorizing the district to enter into a contract with the United States as provided by secs. 2397 and 2398, Rev. Codes.   This proceeding is not brought for the purpose of assessing benefits to the lands within such irrigation district.

2.   The authority of an irrigation district to enter into contracts with the United States to supply water for the irrigation of arid lands, or supplemental water rights, or both, within the jurisdiction of the district is provided under secs. 2397 and 2398, Rev. Codes. (*Pioneer Irr. Dist. v. Stone*, 23 Ida. 344, 130 Pac. 382, cited and followed.)

3. Boards of directors of irrigation districts are authorized, upon compliance with secs. 2396–2401, Rev. Codes, to contract with the United States for the construction, conjunctively, of a drainage system for the purpose of properly draining water-logged lands within the jurisdiction of such districts. (*Bissett v. Pioneer Irr. Dist.*, 21 Ida. 98, 120 Pac. 461; *Pioneer Irr. Dist. v. Stone, supra*, cited and followed.)

4. The Secretary of the Interior by an act of Congress of June 17, 1902, known as the Reclamation Act (32 Stat. L. 388, 7 Fed. Stats. Ann. 1098, U. S. Comp. Stats. (Supp. 1911), p. 662), an act of Congress of February 21, 1911, known as the Warren Act (36 Stats. L. 925), and the subsequent act of Congress passed August 13, 1914, known as the Reclamation Extension Act, is authorized to enter into a contract with an irrigation district to supply water to irrigate arid lands or to supplement water rights for lands partially irrigated within the jurisdiction of such irrigation district; and also to contract with such irrigation district for the joint construction of a proper drainage system where the water-logged condition of lands within said district is partially due to the location of a government canal and water flowing therefrom.

5. Where a contract is entered into between an irrigation district and the United States, providing, among other things, that arid lands within the jurisdiction of the irrigation district, in order to secure a full water right from a government project, shall be assessed not to exceed $75 per acre, such contract is subject to the laws of this state governing irrigation districts and to the apportionment of benefits thereunder, and the fixed charge to be assessed against the lands of any particular land owner within such irrigation district for such water right will be finally determined by the district court of the judicial district within which said irrigation district is located, as provided by secs. 2400–2403, Rev. Codes.

6. The same rule and the same procedure, as indicated in paragraph 5, is to be followed in the assessment of benefits with reference to the sale of partial water rights to supplement water rights already existing, and also with reference to the assessment of benefits incident to the construction of a drainage system within an irrigation district.

7. A judgment of the district court which confirms the proceedings of an irrigation district in entering into a contract with the United States to supply water to irrigate lands within the district, and providing for the joint construction of a drainage system, is not *res judicata* so far as the assessment of benefits to the lands within the district is concerned, and does not preclude statutory proceedings for such assessment.

8.  The dominant purpose of our irrigation district law is to facilitate the economical and permanent reclamation of our arid lands, and it must be the constant aim of judicial construction to effectuate that purpose so far as consistent with the whole body of our law.   The continued existence of an irrigation district depends upon its ability to furnish water to land already within the district. The stability and efficiency of the district as a *quasi*-municipal corporation also depends upon the power to construct proper drainage within its limits.   In the absence of either the right to furnish an adequate water supply or construct an effective drainage system, the very purpose and object of the district would be thwarted and the growth and development of the state retarded to its serious detriment.

9.  Congress has the undoubted power to restrict the right to the use of water furnished from government projects to 160 acres standing in the name of any one land owner.   Having the power to dispose of the right to the use of water made available by the completion of a reclamation project, Congress is in a position to fix the terms and conditions of the use and to authorize the Secretary of the Interior to perform any and all acts and to make such rules and regulations as may be necessary and proper for the purpose of carrying its legislation into full force and effect. But the exercise of such power by Congress does not imply the assumption of federal authority to classify or control the assessment of benefits to lands within an irrigation district organized under the laws of this state, although such lands may also be embraced within a federal reclamation project.

APPEAL from the District Court of the Seventh Judicial District, in and for Canyon County.   Hon. Ed. L. Bryan, Judge.

Action for the examination, confirmation and approval of a contract between the Nampa & Meridian Irrigation District and the Secretary of the Interior.   Judgment for plaintiff. *Affirmed.*

J. B. Eldridge and Floyd C. White, for Appellants.

The district and the Secretary of the Interior cannot enter into a contract, against the will of an individual land owner who has less water than five-eighths of an inch per acre, acquired independently of the district on lands lying above any

of the district's laterals or canals, or any other amount comprising a water right for his said lands, and assess such land owner for a water right at $75 per acre, and not allow credits of any kind for the water right owned by the settler, without compensating the settler for the loss of his said water right. (*Knowles v. New Sweden Irr. Dist.*, 16 Ida. 217, 101 Pac. 81.)

''The due process of law enjoined by the fourteenth amendment requires compensation to be made or adequately secured to the owner of private property taken for public use under the authority of the state.'' (*Chicago, B. & O. R. Co. v. Chicago*, 166 U. S. 226, 17 Sup. Ct. 581, 41 L. ed. 979; *Norwood v. Baker*, 172 U. S. 269, 19 Sup. Ct. 187, 43 L. ed. 443.)

Even if the court had jurisdiction of the United States and of the Secretary of the Interior, it could not enforce the provisions of a mere proposed contract, which may never be signed or executed. The contract referred to in sec. 2397 certainly means an executed contract and not a mere proposed form of contract. No court should render its judgment upon any question involving merely moot matters, which cannot be enforced. (*Johnson v. Malloy*, 74 Cal. 430, 16 Pac. 228; *Adams v. Union R. Co.*, 21 R. I. 134, 42 Atl. 515, 44 L. R. A. 273.)

The contract proposed is an abstract question and is not a fact, and no rights can be based upon it, for it is not executed, and is only a matter of form. (*Tregea v. Board of Directors of the Modesto Irr. Dist.*, 164 U. S. 179, 17 Sup: Ct. 52, 41 L. ed. 395.)

When an issue has been determined by a court of competent jurisdiction, said issue is ended and determined once and for all unless set aside or modified on appeal, or unless a direct proceeding in equity has been instituted and is instituted upon equitable grounds for the purpose of setting aside said judgment or decree. See *Progressive Irr. Dist. v. Anderson*, 19 Ida. 504, 114 Pac. 16, in which this court had under consideration successive steps of confirmation contemplated by sec. 2401, Rev. Codes.

In the confirmation case of *Nampa-Meridian Irr. Dist. v. Brose,* 11 Ida. 474, 83 Pac. 499, this court explicitly ruled that the dry land owners of the district had executed contracts of waiver, and that the dry land owners would procure their water rights from the government, and that such dry land owners received no benefit from the organization and would not be assessed under the organization of the district and the confirmation thereof.

H. E. McElroy and B. E. Stoutemyer, for Respondents.

The affirmative defenses alleged in this case are immaterial, and if they have any merit should be set up in the suit to confirm the assessment of benefits, pending in the lower court.

An irrigation district has jurisdiction to purchase water rights from the government for dry lands lying within the district and to construct a drainage system. (*Pioneer Irr. Dist. v. Stone,* 23 Ida. 344, 130 Pac. 382.)

The contract expressly refers to assessments of benefits by an irrigation district of the state, and an assessment of benefits is a creature of statute law and is made expressly subject to revision by the district court. The district court will be governed by the decision of this court in case of *Knowles v. New Sweden Irr. Dist.,* 16 Ida. 217, 101 Pac. 81.

BUDGE, J.—The original petition in this case was filed February 8, 1915, by the Nampa & Meridian Irrigation District for the examination, approval and confirmation by the district court of a contract with the government of the United States, under which certain arid lands within the jurisdiction of the Nampa & Meridian Irrigation District are to be supplied with water for irrigation, and to provide for the drainage of lands within said irrigation district which are waterlogged, as well as to secure supplemental storage water for the purpose of furnishing an adequate supply of water to properly irrigate lands within said district that are now being partially supplied through the Ridenbaugh canal owned and operated by the Nampa & Meridian Irrigation District

The court. upon the filing of said petition, entered an order fixing the twenty-second day of March, 1915, for the

hearing of the petition. A demurrer to the petition was interposed by J. G. Petrie et al., setting forth numerous objections to its form and sufficiency, which said demurrer was in part confessed; and thereafter, on March 31, 1915, an amended petition was filed.

Said amended petition, *inter alia*, alleges ownership by the Nampa & Meridian Irrigation District of the Ridenbaugh canal; that said canal has a capacity sufficient to irrigate only 27,000 acres of land within the boundaries of said district; and that there are within the boundaries of this district 44,060 acres of land which have not been irrigated, for the reason that the supply of water furnished by the district is inadequate. It further alleges that the United States, by and through its reclamation service, is engaged in the construction of an irrigation project to properly irrigate said 44,060 acres of land within the boundaries of the Nampa & Meridian Irrigation District.

It also appears from the petition that as an unavoidable consequence of the location of the government canal on the higher land, being what is known as the New York Canal, and the use of water on such land for irrigation, as well as the carriage of water in the Ridenbaugh canal and the use of water therefrom for irrigation, being the only source of artificial water supply in that locality, the surface waste waters and the underground seepage waters, resulting from the carriage of water in the canals and the irrigation of the lands, move in a northerly direction across the lands of the district to their drainage outlet in Boise river. This drainage water had waterlogged approximately 2,796 acres of the lands watered from the Ridenbaugh canal and 1,784 acres of the dry lands within the district, up to the month of November, 1913. This affected area is constantly increasing, and it is proposed, as a part of the general plan of the Nampa & Meridian Irrigation District in its contract with the United States of America, to provide for the proper drainage, by the construction of a drainage system, of the lands thus affected.

The petition also alleges that when the Boise project was first promoted, land owners of land in that project organized

a corporation known as the Payette-Boise Water Users' Association, Ltd., at the instance of the United States Reclamation Service, which was to be a means whereby the Reclamation Service might deal collectively with the land owners in that district who were required to purchase stock in said corporation and to enter into contracts for securing water rights for their lands from the Boise project; that the water rights distributed by the Nampa & Meridian Irrigation District from the Ridenbaugh canal are not full-season rights, but are subject to cut in the latter part of the irrigation season; that a large number of the land owners in that irrigation district who were receiving water from the Ridenbaugh canal entered into agreements with the Payette-Boise Water Users' Association, Ltd., for the purpose of securing a supplemental water supply of stored water from the Boise project for use on their lands during low-water season; that it is proposed in the contract between the Nampa & Meridian Irrigation District and the United States of America that these individual contracts between the land owners and the Payette-Boise Water Users' Association, Ltd., be canceled, and that the land owners purchase from the United States such amounts of stored water through the Nampa & Meridian Irrigation District as have been applied for by such land owners—and no more—the same amounting to approximately 880 acre-feet, and costing $24,840, which will be a charge assessed only against land owners within said district who have made application for supplemental water; that the plant for drainage and the acquisition of water rights was, by resolution of the board of directors of the Nampa & Meridian Irrigation District, adopted, and the proposed contract between the district and the United States entered into after the same had been examined and approved by various competent engineers, including the state engineer of the state of Idaho; that notice of election was duly given and the election subsequently held; and that 1,206 votes were cast for, and 160 against, the contract, and it appearing that more than two-thirds of the electors of the district had voted for the contract, it was declared carried.

To this petition a demurrer was filed and, by stipulation of counsel, overruled. On May 1, 1915, defendants filed their answer and cross-complaint to the amended petition, in which they admit paragraphs 1, 2 and 6 to 15, inclusive, of the allegations contained therein, which, upon examination, is an admission of a full compliance with, and due performance of each and every act required by, sec. 2396, Rev. Codes, on the part of the irrigation district prior to submitting for examination, approval and confirmation the contract in this case to the district court of the judicial district wherein said irrigation system is located.

We will not recite, *seriatim,* the denials and the affirmative allegations contained in defendants' answer or the allegations of their cross-complaint, the substance of all of which is: First, that the district cannot enter into a contract to purchase water rights from the government for the irrigation of dry lands lying within the irrigation district; second, that the district has no jurisdiction to construct a drainage system in conjunction with the United States; third, that the district has no authority to purchase stored water rights from the government project to supplement rights in the Ridenbaugh canal to irrigate lands within said irrigation district to which that canal is appurtenant. To the cross-complaint of the defendants petitioners filed an answer.

Upon the issues thus made the case was tried by the court without a jury, and judgment was thereupon entered in favor of the Nampa & Meridian Irrigation District confirming the proceedings taken to secure and provide for the authorization and execution of the contract between the United States, the Payette-Boise Water Users' Association and the Nampa & Meridian Irrigation District, and confirming, approving and declaring said contract valid; from which judgment the defendants prosecute this appeal.

It will be seen from an inspection of the contract which the irrigation district seeks to enter into with the United States, and to which appellants object, that there are three things desired to be accomplished; First, to buy water rights from the government for 44,060 acres of land within the dis-

trict, which is arid in character and which cannot be irrigated from any other known water supply; second, to contract for the supply of stored water to supplement water rights now furnished to lands within the district from the Ridenbaugh canal, owned and operated by the irrigation district; third, to secure a drainage system in conjunction with the United States Reclamation Service for the proper drainage of water-logged lands within the district.

This is a special statutory proceeding authorized by sec. 2401, Rev. Codes, which provides, among other things: "The board of directors of the irrigation district shall file in the district court of the county in which their office is situated a petition, praying in effect that the proceedings aforesaid may be examined, approved and confirmed by the court. . . . . That after the organization of the district is complete, a petition may be filed for confirmation of the proceedings so far, or after the authorization of any issue of bonds such petition may be so filed . . . . "; and is brought for a confirmation to the extent only of determining the legality of the proceedings authorizing the district to enter into the contract with the United States, and not for the purpose of the assessment of benefits to the lands within the irrigation district.

The proceedings sought to be examined, approved and confirmed by the court in this action are prescribed by sec. 2396, Rev. Codes, and are, in substance: (1) That the board of directors shall, by a resolution entered on its records, formulate a general plan of its proposed operations; (2) for the purpose of ascertaining the cost, surveys must be made under the direction of competent engineers; (3) these must be submitted to the state engineer, and he must make a report; (4) the board must determine the amount necessary and call an election and submit the question of whether the right to enter into an obligation with the United States in the manner as in said section provided shall be authorized; (5) the election must be held in the manner provided, and the result ·declared; and if two-thirds of the electors shall vote for the contract, it must be declared carried, and the district will be authorized to make the contract. It is alleged

in the petition that all of these statutory requirements were complied with by the irrigation district, which is admitted by the answer of the defendants.

The right of an irrigation district to enter into contracts with the United States to supply water for irrigation of arid lands or supplemental water rights, or both, within the jurisdiction of the irrigation district, is provided under secs. 2397 and 2398, Rev. Codes. (*Pioneer Irr. Dist. v. Stone,* 23 Ida. 344, 130 Pac. 382; *Hillcrest Irr. Dist. v. Brose,* 24 Ida. 376, 133 Pac. 663.)

The case of *Bissett v. Pioneer Irr. Dist.,* 21 Ida. 98, 120 Pac. 461, supports the position taken by the Nampa & Meridian Irrigation District to the effect that it has authority, upon compliance with the statutes of this state governing irrigation districts, to enter into a contract with the United States, and to act conjunctively in the construction of a drainage system for the purpose of properly draining water-logged lands within said district.

That the Secretary of the Interior has the power to enter into a contract to supply water to an irrigation district under the provisions of the act of Congress of June 17, 1902, known as the Reclamation Act (32 Stat. at L. 388, 7 Fed. Stats. Ann. 1098, U. S. Comp. Stats. (Supp. 1911), p. 662), we think there can be no doubt. If there was any doubt of the authority of that official to enter into such contracts, it was clearly removed by the act of Congress of Februray 21, 1911, known as the Warren Act (36 Stat. at L. 925, sec. 2), and the subsequent enactment of Congress passed August 13, 1914, known as the Reclamation Extension Act (sec. 7).

The contract provides, among other things, that the arid lands within the irrigation district, in order to secure a full water right from the Boise project, shall be assessed not to exceed $75 per acre. The amount, therefore, that will be eventually a fixed charge under the contract against the land of any particular land holder within the district will be finally determined by the district court, upon the assessment of benefits as provided under secs. 2400–2403, Rev. Codes. If it should be determined by the district court that any

lands within the district are not benefited by reason of the application of water thereon, then no benefits can be assessed against them and no injustice can be done the land owner. While, on the other hand, should the district court find that by reason of the application of the water under the contract, the value of the land is increased and the owner is thereby benefited, no wrong can result to him by reason of the assessment of such benefits.

The contract is subject to the laws of this state governing irrigation districts in the assessment of benefits. And the same principle of law will apply to the assessment of benefits under the contract here under consideration as was applied in the case of *Knowles v. New Sweden Irr. Dist.* (on rehearing), 16 Ida. 235, 101 Pac. 87, in which case it was held by this court that ''Where a party owns his own water right and would not receive any benefits from the organization of the district, he may, upon proper showing, have his land excluded from the district and from assessment,'' by appearing in the proper forum for that purpose.

Accordingly, if there are any lands within the Nampa & Meridian Irrigation District which are subject to irrigation from the waters received under the contract from the Boise project, which have a water right in whole or in part, or that will not be benefited by reason of the contract entered into between the United States and the irrigation district, said lands will not be subject to assessment in excess of benefits.

Sec. 2400, Rev. Codes, provides that notice shall be given to each of the land owners of the time and place the board of directors will make the assessment of benefits, when a hearing will be given to each owner of land within the district, and his lands will be classified and assessed according to benefits received. Should any land owner make objection to said assessment or any part thereof before said board and said objection is overruled by the board and the land owner does not consent to the assessment as finally determined, such objection shall, without further proceedings, be regarded as appealed to the district court and to be heard at the said proceedings to confirm as aforesaid. Like objections may be

urged by land owners who may be affected by the drainage system or stored supplemental water rights.

Sec. 2403, Rev. Codes, among other things, provides:

"The court shall disregard every error, irregularity or omission which does not affect the substantial right of any party, and if the court shall find that said assessment, list and apportionment are in any substantial matter erroneous or unjust, the same shall not be returned to said board, but the court shall proceed to correct the same so as to conform to this title and the rights of all parties in the premises, and the final order or decree of the court may approve and confirm such proceedings in part, and disapprove other parts of said proceedings; and . . . . the court shall correct all the errors in the assessment, apportionment and distribution of costs as above provided, and render a final decree approving and confirming all of the said proceedings. . . . . "

A judgment of the district court in affirming the proceedings of the irrigation district in entering into a contract with the United States to supply water to irrigate lands within the district and to provide for the joint construction of a drainage system, is not *res judicata,* so far as the assessment of benefits to the lands within the district is concerned, and does not preclude statutory proceedings for such assessment.

The dominant purpose of our irrigation district law is to facilitate the economical and permanent reclamation of our arid lands, and it must be the constant aim of judicial construction to effectuate that purpose so far as consistent with the whole body of our law. The continued existence of an irrigation district depends upon its ability to furnish water to land owners within the district. The stability and efficiency of the district as a *quasi*-municipal corporation also depends upon the power to construct proper drainage within its limits. In the absence of either the right to furnish an adequate water supply or to construct an effective drainage system, the very purpose and object of the district would be thwarted, and the growth and development of the state retarded to its serious detriment.

The contract in question provides, among other things, that "The district agrees to distribute the amount of water delivered to it by the United States under this contract in full compliance with the provisions of said Reclamation Act of June 17, 1902, and the rules and regulations thereunder, and to use and distribute the same only upon the lands within the district, and in compliance with the provisions of section 2 of the act of Congress of February 21, 1911 (36 Stat. L. 925), known as the Warren Act."

Sec. 5 of the Reclamation Act of June 17, 1902, *supra,* among other things, provides: "No right to the use of water for land in private ownership shall be sold for a tract exceeding one hundred and sixty acres to any one land owner, and no such sale shall be made to any land owner unless he be an actual *bona fide* resident on such land, or occupant thereof residing in the neighborhood of said land, . . . . "

Sec. 10 of said act provides: "That the Secretary of the Interior is hereby authorized to perform any and all acts and to make such rules and regulations as may be necessary and proper for the purpose of carrying the provisions of this act into full force and effect."

The Secretary, in order to carry out the purposes of the Reclamation Act, and in pursuance thereof, issued a general reclamation circular during the year 1909, and reissued said circular from time to time, the last being on February 6, 1913. In this circular, the Secretary of the Interior fixed a limit of residence in the neighborhood of said land at a maximum of fifty miles, and further provided that this limit of distance may be varied depending on local conditions. This circular also restricted the right to the use of water obtained from a government project by any one land owner to 160 acres of irrigable land.

The act of Congress of February 21, 1911, known as the Warren Act (36 Stat. at L. 925), in section 2 provides: "That in carrying out the provisions of said Reclamation Act and acts amendatory thereof or supplementary thereto, the Secretary of the Interior is authorized, upon such terms as may be agreed upon, to co-operate with irrigation districts,

water users' associations, corporations, entrymen or water users for the construction or use of such reservoirs, canals, or ditches as may be advantageously used by the government and irrigation districts, water users' associations, corporations, entrymen or water users for impounding, delivering and carrying water for irrigation purposes: .... *Provided further,* that water shall not be furnished from any such reservoir or delivered through any such canal or ditch to any one land owner in excess of an amount sufficient to irrigate one hundred and sixty acres: .... ''

The act of Congress passed August 13, 1914, known as the Reclamation Extension Act, sec. 7, provides:

''That the Secretary of the Interior is hereby authorized, in his discretion, to designate and appoint, under such rules and regulations as he may prescribe, the legally organized water users' association or irrigation district, under any reclamation project, as the fiscal agent of the United States to collect the annual payments on the construction charge of the project and the annual charges for operation and maintenance and all penalties: .... ''

It will, therefore, be observed that the act of Congress of February 21, 1911, known as the Warren Act, and the subsequent act of Congress passed August 13, 1914, known as the Reclamation Extension Act, make no provision for residence upon the lands to be irrigated from the waters of a government project. The acts of June 17, 1902, and of February 21, 1911, both provide, however, that water shall not be furnished from any such reservoir or delivered through any such canal or ditch to any one land owner in excess of an amount sufficient to irrigate 160 acres. Consequently, any owner of land within a government project or an irrigation district cannot secure the use of water from a government project in excess of an amount sufficient to irrigate 160 acres, whether he owns more than that amount of acreage in such district or not.

The regulations of the Secretary of the Interior, heretofore referred to, contain the following provision:

"Holders of more than 160 acres of irrigable land within a reclamation project must sell or dispose of all in excess of that area before they can receive water."

The contract proposed to be entered into between the United States and the Nampa & Meridian Irrigation District, as before stated, provides that the district will distribute the water to the purchasers of water rights under the acts of Congress and the regulations of the Secretary of the Interior, *supra.* This provision of the contract is strenuously protested against by appellants for the reason, as they contend, that a land owner within the district who owns land in excess of 160 acres would be forced to dispose of all the lands he possesses in excess of 160 acres, or suffer the consequences of being taxed for all his lands, yet be denied water for the same in excess of 160 acres. The restriction under the above regulation is to the use of water. The land owner who has land in excess of 160 acres may permit the whole thereof to be assessed with a government water right rather than insist that only 160 acres be so assessed, as, although he might be able to secure only enough water to irrigate 160 acres for his own use, the balance of his land would be provided with a permanent water right which he might dispose of within a reasonable time; or, upon the apportionment of benefits, it may be determined that none of his land would be liable to assessment of benefits for a water right, or that no greater portion of his land than 160 acres would be susceptible of irrigation and to the assessment of benefits.

There can be no doubt that Congress has the power to restrict the right to the use of water furnished from government projects to 160 acres standing in the name of an individual, but we do not think that body would assume the authority to control the benefits which might be assessed to lands within an irrigation district organized under the laws of this state.

The United States, through the Reclamation Service, has at a great expense constructed the Boise project, whereby it acquired for sale and distribution ample water for the proper irrigation of the lands under said project, as well as

a surplus sufficient in amount to properly irrigate the arid lands and supplement the now inadequate supply of water within the Nampa & Meridian Irrigation District, and has offered to the irrigation district the right to the use of said surplus water under the stipulations contained in the proposed contract. Having the authority under the law to dispose of the right to the use of water thus acquired, it is in a position to fix the terms and conditions of its use, subject to the power of the court to assess benefits within the district.

We are, however, aware of no valid reason why we should anticipate the final action of the district court in assessing the benefits to land owners within the irrigation district who own land in excess of 160 acres. To do so would, in effect, require the district court in this proceeding to definitely fix the benefits to be assessed at a stipulated sum and thus deprive each owner of the land within the district of the right which he has under the statutes of this state to prove that his particular lands would not be benefited by reason of the application of water under the contract.

Should the district court reach the conclusion that a land owner who holds title to lands in excess of 160 acres receives no benefits, or that his benefits would be limited to only 160 acres or less of land, the objection so strenuously urged against this provision of the contract would be untenable. That being true, it necessarily follows that the objections raised at this time to the authority of the irrigation district to enter into the contract with the government by reason of the fact that possibly a serious injustice may be done to land owners within the district who own lands in excess of 160 acres before the assessment of benefits has been made, cannot be considered in this proceeding.

There are other objections than those we have discussed urged by counsel for appellants in opposition to the contract sought to be entered into between the Nampa & Meridian Irrigation District and the United States. However, although we have carefully considered each and every objection urged, we find that many of them are immaterial so far as this case

is concerned and are not properly before us for determination at this time.

This case was tried in the district court upon the theory that this was a special proceeding brought for the express purpose of having the proceedings authorizing the Nampa & Meridian Irrigation District to enter into the contract under consideration examined, approved and confirmed by the district court. Counsel for appellants have taken the position, and we think erroneously, that this action was brought not only for that purpose, but also for the purpose of the apportionment of benefits under sec. 2399, Rev. Codes; and in order to raise this question, they alleged in their answer affirmative matters involving it which were wholly immaterial and which should have been stricken from the answer. The cross-complaint and the answer to the cross-complaint were likewise immaterial and were subject to the same motion. The district court did not find upon any of these matters, for the reason that they were immaterial in this proceeding. We think that this conclusion reached by the trial court was correct.

The judgment of the lower court is affirmed. Costs are awarded to respondent.

Sullivan, C. J., concurs.

MORGAN, J., Concurring.—While I am in accord with the conclusion reached by the majority of the court, I am not in accord with this doctrine announced in the opinion: "There can be no doubt that Congress has the power to restrict the right to the use of water furnished from government projects to 160 acres standing in the name of an individual, . . . . " and which is thus stated at the commencement of sec. 9 of the syllabus: "Congress has the undoubted power to restrict the right to the use of water furnished from government projects to 160 acres standing in the name of any one land owner. . . . . "

By an act of Congress known as the "Idaho Admission Bill," approved July 3, 1890, this state was admitted to the Union. The preamble to that act is as follows:

"Whereas, The people of the Territory of Idaho did, on the 4th day of July, 1889, by a convention of delegates called and assembled for that purpose, form for themselves a Constitution, which Constitution was ratified and adopted by the people of said Territory at an election held therefor on the first Tuesday in November, 1889, which Constitution is republican in form, and is in conformity with the Constitution of the United States; and,

"Whereas, Said convention and the people of said Territory have asked the admission of said Territory into the Union of States on an equal footing with the original States in all respects whatever.    Therefore,

"Be it enacted by the Senate and House of Representatives of the United States of America, in Congress assembled, That the State of Idaho is hereby declared to be a State of the United States of America, and is hereby declared admitted into the Union on an equal footing with the original States in all respects whatever; and that the Constitution which the people of Idaho have formed for themselves be, and the same is hereby accepted, ratified and confirmed."    (Rev. Codes of Idaho, vol. 1, p. 53.)

It will be observed that the constitution of the state of Idaho, which had theretofore been adopted by the people of the territory was by Congress expressly accepted, ratified and confirmed.    Sec. 1, art. 15, of that constitution is as follows: "The use of all waters now appropriated or that may hereafter be appropriated for sale, rental or distribution; also of all water originally appropriated for private use, but which after such appropriation has heretofore been, or may hereafter be sold, rented, or distributed, is hereby declared to be a public use, and subject to the regulation and control of the state in the manner prescribed by law."

There is no room for question that it was the intention of the people of Idaho in framing and adopting the constitution, and of Congress in accepting, ratifying and confirming it, that the sale, rental and distribution of all the waters within the state theretofore appropriated, or thereafter to

be appropriated, should be and remain subject to the regulation and control of the state and not subject to the regulation or control of the United States.

This question appears to have been prematurely raised in this proceeding and was not properly before the district court, nor is it properly before this court for decision. My concurrence in the conclusion reached by the majority of the court with respect to this point is, therefore, based upon the view expressed in the following portion of the opinion: "We are, however, aware of no valid reason why we should anticipate the final action of the district court in assessing the benefits to land owners within the irrigation district who own land in excess of 160 acres."