THE PEOPLE OF PUERTO RICO, ETC., Plaintiff and Appellant, *v.* RUSSELL & Co., (*S. en C.*), Defendant and Appellee.

No. 7466. Argued November 22, 1939.—Decided March 15, 1940.

George A. Malcolm, Attorney General, and E. Campos del Toro, Assistant Attorney General, for appellant.  R. Castro Fernández and José López Baralt for appellee.

MR. JUSTICE WOLF delivered the opinion of the court.

In 1926 Russell & Co. filed a petition for an injunction to restrain the Treasurer of Puerto Rico from collecting certain taxes.  On March 4, 1927, Congress enacted that:

"Sec. 48.—That the Supreme and District Courts of Porto Rico and the respective judges thereof may grant writs of habeas corpus in all cases in which the same are grantable by the judges of the District Courts of the United States, and the District Courts may grant writs of mandamus in all proper cases.

"That no suit for the purpose of restraining the assessment or collection of any tax imposed by the laws of Porto Rico shall be maintained in the District Court of the United States for Porto Rico."  44 Stats. 1418, 1421.

By a subsequent act it further enacted that any tax which had been uncollected on account of injunction proceedings might be collected not by the summary administrative proceeding but a lawsuit. The Treasurer filed a complaint against Russell & Co. on June 24, 1930, to collect the tax, in the District Court of San Juan. The defendant moved for a change of venue and the cause was removed to the District Court of the United States on the ground of diverse citizenship. The case was tried therein and judgment was given for the defendant. The People of Puerto Rico appealed to the Circuit Court of Appeals for the First Circuit which, affirmed the Federal District Court. *People* v. *Havemeyer et al.*, 60 F. (2d) 10. The People went to the Supreme Court of the United States on *certiorari* and the court reversed the Circuit Court of Appeals and the Federal District Court on the ground that there was no diversity of citizenship. *People of Puerto Rico* v. *Russell & Co.*, 288 U. S. 476, 77 L. Ed. 903.

The case was remanded to the Territorial District Court. After the trial that court decided the case along the same lines that had been laid down by the Circuit Court of Appeals when it affirmed the Federal District Court. The People appealed in December 1935 but it was not until February 8, 1937, that the transcript of the record was filed. The parties filed their briefs on August 3, 1937, and May 2, 1936. A hearing was held on May 4, 1938, and a second hearing on November 22, 1939.

The facts of the case are as follows:

Russell & Co. is the owner in fee simple or the lessee of six large sugar cane plantations on the south side of the Island. To each of these plantations or estates certain water rights attach by virtue of concession from the Crown of Spain, the previous sovereign. These concessions consist of the right to take from the Jacaguas River certain quantities of water for irrigation purposes.

On September 18, 1908, the Legislature passed an Act to be found in Laws of 1909, p. 152, creating an irrigation district on the South side of the Island, and that act established a complete system of irrigation to serve that district. By that act the landowners within the district would pay a certain tax on each acre of land. There was also a provision to acquire the water rights by condemnation, purchase, or exchange for credits against the tax, from such landowners as held such properties. By Act No. 128 of August 8, 1913, Special Session Laws, p. 54, the Commissioner of the Interior was empowered among other things to contract with the owners of water rights who had not ceded, sold or otherwise transferred them to the irrigation district. On August 26, 1914, Russell & Co. and the owners of the estates which they hold on lease, executed contracts with the Commissioner of the Interior, whereby the concessions or water rights were suspended and they agreed to receive from the irrigation system a certain quantity of water in exchange. On July 8, 1921, the Legislature passed Act No. 49, by which any land within the irrigation district which had not been subject to the tax was also made to respond. It is this tax that the plaintiff is trying to collect.

It should also be said that Russell & Co. is bound by its leases to pay all the taxes imposed upon the land which it holds by said leases, and if the tax is held constitutional it has to pay the tax upon every one of the six plantations.

The reasoning of the Circuit Court should be given careful attention but under the circumstances is not binding.

The defendant maintained that Act No. 49 of 1921 was void and unconstitutional and also that the action had prescribed. The lower court found the Act unconstitutional, following the Circuit Court of Appeals, *supra,* did not pass upon the question of prescription, but said by way of *dictum:*

". . . However, we may say that if Act No. 49 of the Legislative Assembly of Puerto Rico, dated July 8, 1921, were valid and constitutional, the aforesaid Act No. 302 would only be applicable to

the taxes whose collection had been stopped by an *injunction* pending on March 4, 1927, when the Act amending section 48 of the Organic Act was approved, but not to those imposed thereafter, and the amended complaint in this case includes the collection of taxes from the year 1922–1923 to 1933–34, both inclusive.''

The appellant assigns three errors, as follows:

''1. The District Court of San Juan erred in declaring null and void Act No. 49 dated July 8, 1921, folowing the grounds of the judgment rendered by the Circuit Court of Appeals for the First Circuit of the United States (*People of Puerto Rico* v. *Havemeyer*, 60 F. (2d) p. 10) to wit:

''A.—Because said Act delegated legislative powers to the Commissioner of the Interior in the part that refers to the imposition of the special tax which the Act provides upon the lands which receive the benefits of the irrigation system.

''B.—Because it impairs the value of the obligations arisen from the contracts executed on August 26, 1914, between the People of Puerto Rico and the defendant or its predecessors in title.

''2. The District Court of San Juan erred in deciding that the imposition of the assessment or special tax is not justified while the contracts established in deed No. 20 dated June 8, 1916, executed before Notary Frank Antonsanti, are in force, and the water rights granted by the Crown of Spain to the defendant or its predecessors in title are not renounced, abandoned, relinquished or condemned.

''3. The District Court of San Juan erred in not ordering the defendant to pay the amount of the special tax which the complaint seeks to collect.''

The three errors will now be considered.

■■ As to the undue delegation of powers, we think that there is none. The Commissioner of the Interior fixes the water charges each year by performing a definite calculation. Even if the statute did not so specifically determine the computation of the charges we would not hold it an undue delegation of powers.

''The Courts have upheld the validity of statutes authorizing irrigation districts and other districts organized for the same purpose, to

levy taxes and assessments, and such statutes do not fall within constitutional provisions regulating assessment and collection of taxes for general state purposes." 67 C. J. 1337, par. 925.

The text is supported by *Fallbrook Irr. Dist.* v. *Bradley,* 17 Sup. Ct. 56, 164 U. S. 112, 41 L. Ed. 369; *Turlock Irr. Dist.* v. *Williams,* 79 Cal. 360, 18 P. 379.

Title 43 of the Code of Laws of the United States is entitled "Public Lands." Chapter 12 of that title bears the name "Reclamation and Irrigation of Lands by Federal Government" and is known as the "Reclamation Law." It contains provisions like the following:

"Sec. 373.—The Secretary of the Interior is hereby authorized to perform any and all acts and to make such rules and regulations as may be necessary and proper for the purpose of carrying the provisions of this chapter into full force and effect.

"Sec. 374.—Whenever in the opinion of the Secretary of the Interior any lands. . . are not needed. . . said Secretary of the Interior may cause said lands . . . to be appraised. . . . and. . . to sell the same. . .

". . . the Secretary of the Interior is authorized. . . to convey all the right title and interest of the United States of, in, and to said lands. . . subject however to such reservations, limitations or conditions as said Secretary may deem proper. . ."

The Secretary is given absolute power to determine whether the owners of land within an irrigation district may retain their land or must dispose of it.

Section 418 says:

"Before any contract is let or work begun for the construction of any reclamation project adopted after August 13, 1914, the Secretary of the Interior shall require the owners of private lands thereunder to agree to dispose of all lands in excess of the area which he shall deem sufficient for the support of a family upon the land in question, upon such terms and not to exceed such price as the Secretary of the Interior may designate; and if any landowner shall refuse to agree to the requirements fixed by the Secretary of the Interior, his land shall not be included within the project if adopted for construction."

Absolute power is also given to the Secretary to determine "the charges which shall be made per acre . . . upon lands in private ownership which may be irrigated by the waters of the said irrigation project; and the number of annual installments in which such charges shall be paid and the time when such payments shall commence." Sec. 419.

Section 462 also provides for the payment of maintenance charges.

In a great number of cases the reclamation Act has been brought before the courts and its provisions have been upheld. In no case has it been attacked because it unduly delegates legislative powers to the Secretary of the Interior; but the acts of the Secretary have been repeatedly affirmed as within the scope of his powers.

In *Swigart* v. *Baker,* 229 U. S. 187, it was held that the Secretary of the Interior of the United States was authorized to assess cost of maintenance as well as of construction by the Reclamation Act of 1902 (32 Stat. 388, 1093) even though the act only says that the Secretary may assess "the cost of construction of the project." The court said:

. The phrase is not expressly defined and being general in its terms is not necessarily limited to building, but may include the preservation and maintenance of what has been built."

The cases decided by the Supreme Court of Puerto Rico on the question of delegation of powers have been very few. *People* v. *Neagle,* 21 P.R.R. 339; *People* v. *Ramírez,* 42 P.R.R. 77; *Feliciano* v. *López,* 44 P.R.R. 911; *People* v. *White Star Bus Line, Inc.,* 45 P.R.R. 153; *M. Taboada & Co.* v. *Rivera, Com'r.,* 51 P.R.R. 246, and *Sifre* v. *Pellón,* 54 P.R.R. 559. Of these, only the first has any bearing.

The *Neagle* case involved the constitutionality of a statute (Act of August 12, 1913, Laws of Special Session of 1913, p. 90, Act No. 134) which gave authority to the Treasurer of Puerto Rico to classify the different businesses into classes.

We copy from the opinion:

"The respondent admits that legislatures may adopt primary standards and leave to administrative officials the duty of filling in 'details' so as to make the law operative. He submits, however, that the Legislature of Puerto Rico has not set a primary standard within the meaning of the decisions which the Government in its brief relies on. We shall give a résumé of these decisions."

After a study of the authorities the court said:

". . . We cannot see that it makes any difference that the Treasurer is given a wide discretion provided that his powers are administrative rather than legislative. The question always remains, under the words of the statute and the legislative history of the country, whether the powers conferred have been recognized as administrative rather than legislative. A specific case has been found in *Ould & Carrington, supra.* The respondent does not attempt to distinguish the case, but he attacks the reasoning. The reasoning may not be entirely satisfactory but the judgment remains a fact, and a court of the United States has decided that similar powers to those conferred by Act No. 134 upon the Treasurer of Porto Rico are administrative rather than legislative."

In the case at bar we find that the courts of other jurisdictions have held valid statutes of the same nature as the one in issue. The ample powers of the Secretary of the Interior of the United States have been broadened by judicial interpretation (*Swigart* v. *Baker, supra*).

In the opinion rendered in the *Neagle* case, *supra,* several cases are cited and the case of *Chicago and Northwestern Railway Co.* v. *Day,* 35 Fed. 874, is copied in part. All these cases tend to support the contention that in this case, as in that of Neagle, the delegation was of administrative rather than of legislative powers.

As we shall see later from the act itself, what the commissioner does is to fill in details. We copy from the opinion of the Circuit Court of Appeals:

"In determining the amount to be raised, the Treasurer of Porto Rico is directed to take the amount estimated by the Commissioner

of the Interior to defray the cost of operation and maintenance of the irrigation system for the following fiscal year (the estimate of the commissioner to be made and certified as provided in section 11 of Act No. 128 of August 8, 1913), and add to this estimated amount or subtract therefrom, as the case may be, any resulting deficit below or surplus above the amount expended for operation and maintenance of the system the preceding year. The treasurer is then to divide the amount so determined by the total number of acres (arrived at as prescribed in the act) to get the tax rate per acre to be levied during the subsequent fiscal year on lands outside the district which are not subject to a tax to meet the cost of the system.

"The provision complained of in section 2 of Act No. 49 as delegating legislative power is the one requiring the treasurer in ascertaining the rate for assessing the tax to take the 'amount estimated or certified to as estimated by the Commissioner of he Interior for defraying the cost of operation and maintenance of the irrigation system during the following fiscal year.' The contention is that the Legislature could levy and authorize the assessment of the tax in either one of two ways. It could itself fix a flat rate at which the receivers of water could be taxed per acre foot, or it could itself determine the amount of money to be raised for the ensuing year to defray the expenses of maintenance and operation, but that it could not delegate the determination of that amount, and thereby the rate, to the discretion of the Commissioner of the Interior; that the determination of the amount to be raised or the rate is a legislative matter involving discretion, which the legislature cannot delegate to administrative officers.

"Counsel for the plaintiff, however, contend that the determination of the *amount to be raised* for an ensuing year is a pure matter of computation, and that the act has pointed out how that computation shall be made." *People* v. *Havemeyer, supra.*

If the estimate is too high or too low, a surplus or a deficit will result. A surplus will be credited to the budget of the following year, thereby reducing the tax; a deficit will be added to the budget of the following year. Thus, any error committed by the commissioner will be automatically corrected when the next budget is prepared. It will be seen that the Commissioner's discretion does not play an important part in the computation of the tax. Indeed, the com-

missioner's role could be eliminated and the cost of maintenance estimated some other way. For example, the budget of a previous year to be taken as tentative for the following one. Such a procedure is followed in estimating the premium rates for the State Insurance Fund.

The landowner pays the tax in the computation of which the commissioner's report is used. But since any difference between that estimate and the real cost of maintenance is adjusted the landowner is really paying for the exact cost of maintenance.

Furthermore, it has not been charged, or even suggested that the commissioner's estimates are unjust, or confiscatory.

We hold, therefore, that the act contains no undue delegation of powers.

As to the other contention, that the contracts are impaired, we also think it is without merit.

The contracts do not say that the People of Puerto Rico bind themselves not to impose taxes. Indeed, even if a clause like that had been included, we apprehend it would have been void.

Another point that the appellant makes is that the appellee failed to prove its concessions in the lower court. While it is true, as the appellee says, that the appellant accepted and admitted that said concessions existed, nothing has been brought before this or any of the other courts which have passed on this case to show that a tax exemption was attached to them. As far as the record goes, these concessions are ordinary water concessions, like a number of others granted to landowners in this Island and Spain. The only provision of which we know in regard to taxes was a section in the primitive Law of Waters by which the Crown bound itself not to raise the taxes on the lands benefited by the concession during a ten year period.

The appellee's case might be strengthened if the tax imposed—charges for the maintenance of the system—were considered as a payment for the water received by the land-

owners from the Irrigation system. It could then be said that the appellee does not have to buy water and therefore it should not pay for any. But the theory is different. We copy from Curpus Juris:

"While it has been broadly stated that the benefit to the land is not the source of the power to tax it for irrigation purposes, generally speaking, the justification and authority for the levying of assessments or taxes in the nature of assessments by an irrigation or similar district is derived from the benefits which the expenditure of the tax or assessment confers on the owners of land within the district, and a tax or assessment without supporting benefit, or out of all proportion to the benefits conferred, as where the assessment is based on an acreage in excess of that owned, can not be sustained although the fact that there is no benefit sufficient to support the whole assessment will not relieve the landowner from the duty to pay such portion of the assessment as is supported by a benefit." 67 C. J. 1341, par. 932.

The text is supported by *In re Madera Irr. Dist.*, 92 Cal. 296, 28 P. 272, 275, 14 L.R.A. 755; *American Falls Reservoir Co.* v. *Thrall*, 39 Ida. 105, 228 P. 236; *Cosman* v. *Chestnut Valley Irr. Dist.*, 74 Mont. Ill., 238 P. 879, 40 A.L.R. 1344.

"Broadly speaking, the word 'benefit' as used in a statutory provision requiring assessments to be proportionate to benefits received, will be construed as meaning such benefits as promote the prosperity of the district and add to property values. Generally speaking, the theory of assessment for benefits is that the landowner has received by reason of the irrigation system an increase in the market value of his property and that increase marks the extent of the benefit, although there is authority holding that the market value of lands within an irrigation district is not conclusive on the question of benefits equaling assessments, and that there may be an actual benefit without proof of a corresponding increase in market value." 67 C. J. 1347, par. 945.

The text is supported by *Colburn* v. *Wilson*, 24 Ida. 94, 132 P. 579; *Union Trust Co.* v. *Carnhope Irr. Dist.*, 132 Wash. 539, 232 P. 341; *In re Goshen Irr. Dist.*, 42 Wyo. 229, 293 P. 373.

That the assessments need not be equivalent to the water used by the landowner has been repeatedly held.

". . . the owner of irrigable land within a district must respond to the annual assessment for the operation and maintenance of the system, where the water is made available for his use, even though he does not use it." *Otis Orchards Co.* v. *Otis Orchards Irr. Dist.,* No. 1, 124 Wash. 210, 215 P. 24, 25.

In *Nampa & Meridian Irr. Dist.* v. *Petrie,* 28 Ida. 227, 153 P. 425, 429, the Supreme Court of Idaho held valid a provision granting water rights to landowners for only 160 acres while subjecting their entire acreage to district assessments according to benefits. This case was followed in *Saylor* v. *Gray,* 41 Ariz. 558, 20 P. (2d) 441.

Similarly:

"A landowner is not entitled to exclusion of his land from an irrigation district for the sole reason that such land has an individual water right. Such tract of land would be benefited from the ability of the irrigation district to furnish water in times of emergency, to supply better or cheaper service, and to furnish electric energy or domestic water." *Bleakly* v. *Priest Rapids Irr. Dist.,* 168 Wash. 267, 11 P. (2d) 597.

Of all the cases studied, the one which most resembles the one at bar is *Knowles* v. *New Sweden Irrigation District,* 16 Idaho 217, 101 Pac. 81. The facts there are as follows: A man named Scott purchased, for $1,800, a water right from the Great Western Canal Company (a private concern) whereby he received 25 inches of water per second for which he paid a certain rental every year. Subsequently the New Sweden Irrigation District was organized under the provisions of an act of the state legislature. The Irrigation District purchased the Great Western Canal Construction Company. Scott sold his land to Knowles. The Board of Directors of the Irrigation District levied an assessment on all lands included in the district and among them Knowles', to pay interest and reduce the principal on certain bonds which had been issued in payment of the Great Western

Canal Company. Knowles paid under protest and brought action to recover and to enjoin the district from levying any more assessments on his land. The Supreme Court of Idaho said:

"Now it is clear to us that for the purchase of this system respondent could not legally and lawfully assess appellant's property until such time as it had either purchased or acquired his water right and privileges and reduced him to a common level and placed him on a common footing with other landowners and water consumers in the district."

The court found for the plaintiff. On rehearing, however, the court reversed itself, and said:

"Under our irrigation law as it existed at the time of the organization of this District and the assessments referred to were made, if the land of the plaintiff was properly included in said irrigation district, it was subject to assessment for benefits, provided it received any, whether the owner of said land owned a water right in connection therewith or not, for a person in an irrigation district may receive certain benefits, regardless of whether the owner has a water right in connection therewith or not."

And later on it says:

"In *Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369, the Supreme Court of the United States had under consideration some of the questions involved in this case, and it was there held that land, which can be used beneficially to a certain extent without irrigation, may be so improved by it that such land can properly be included in an irrigation district and assessed for the benefit of the artificial irrigation as a public improvement, and that under the Wright irrigation law of California, the board is required to hear the petition for the organization of the district upon a notice and must not include land which will not be benefited; that it necessarily follows that a person interested has a right to appear before the board and contest the facts upon which the petition is based and as to the benefits to any particular tract of land included in the proposed district. In referring to the power of the Legislature to constitute taxing districts, the court said: 'It has been held in this court that the Legislature has power to fix such a district for itself without any hearing as to the benefits, for the

purpose of assessing upon the lands within the district the cost of a local public improvement. The Legislature, when it fixes the district itself, is supposed to have made proper inquiry and to have finally and conclusively determined the fact of benefits to the land included in the district, and the citizen has no constitutional right to any other or further hearing upon that question.' "

And later the court said:

"In *Pioneer Irrigation District* v. *Bradley*, 8 *Idaho* 310, 68 Pac. 295, 101 Am. St. Rep. 201, this court held the irrigation district act now under consideration constitutional. This case in no manner involves the taking of private property without due process of law, nor the violation of the obligation of a contract. The only question involved under the issues is the validity of certain assessments made against the lands of the plaintiff."

In that case the Idaho court held that the benefit received by a landowner who possessed a water right was enough to make him liable to assessments in the same degree as other landowners.

In Puerto Rico the legislature apparently, by its enactments, considers that the benefits of landowners who have no water rights, or who had them but relinquished them, are greater than the benefits received by landowners who are in the appellee's position.

Consequently the former have to pay construction charges, as well as maintenance. The statute provides:

"Section 11.—The amount that shall be assessed and levied upon a given tract of land included in the permanent irrigation district shall be determined as follows:

"The Treasurer of Porto Rico shall calculate the amount of the interest and principal or sinking fund due upon outstanding irrigation bonds for the ensuing fiscal year, and shall add thereto the total amount due upon credits for the ensuing year on account of water rights or concessions; and shall further add thereto the amount estimated to him by the Commissioner of the Interior for the cost of operation and maintenance of the irrigation system for the said ensuing fiscal year. He shall then either add to or subtract from the amount so obtained the estimated amount of any deficit or sur-

plus, as the case may be, existing in connection with the Irrigation Fund from the operations of the current fiscal year. From this amount he shall substract the amount estimated and certified as estimated to him by the Commissioner of the Interior as the receipts for the ensuing fiscal year from any water developed in connection with the irrigation system (until such time as the total bonded indebtedness incurred on account of the irrigation system shall have been paid in full); and the amount estimated and certified as estimated to him by the Commissioner of the Interior as receipts for the ensuing fiscal year from any other source except from the issues of bonds and from special assessments herein provided for to be levied upon the land in the permanent irrigation district. To the amount so determined the Treasurer shall add an amount equivalent to two per centum of the total as a margin of safety for delayed collections, and the amount thus determined by the Treasurer of Porto Rico, subject to the limitations and provisions hereinafter set forth, shall be and constitute the total sum assessed for the said fiscal year, and the same shall be levied upon the lands at the time included in the permanent irrigation district (including any lands owned by The People of Porto Rico which form part of the said district, which lands shall be liable for and pay taxes levied hereunder in the same manner as the other lands included in the said irrigation district); . . . (Act No. 128 of 1913 (2), p. 67.)

The lands of the appellee are included in subdivision 4 of section 2 of the Act (Act No. 49 of 1921, Session Laws, p. 367). It reads:

"Section 2.—That the tax to be levied on each tract of land receiving water from the irrigation system, but which under the law in force does not contribute towards defraying the cost of such system, shall be classified as follows: The Treasurer of Porto Rico shall have charge of fixing the total number of acres receiving water from the irrigation system which includes. . . (4) parcels of land irrigated by water supplied because of acquired rights or concessions which have not been asigned, which said water, pursuant to the terms of the contracts entered into with the Commissioner of the Interior or under decisions of the Irrigation Commission, is taken and measured in the rivers at the points of intake indicated in the said concessions; and such tracts shall be determined by dividing the value of the said concessions in acre-feet per year, as the same may be or as shall have been fixed by the Commissioner of the

Interior, by the Irrigation Commissioner or by decision of the courts in cases of appeal, by five. The Treasurer of Porto Rico shall then take amount estimated or certified to as estimated by the Commissioner of the Interior for defraying the cost of operations and maintenance of the Irrigation system during the following fiscal year (as provided under section 11 of Act 128, approved August 8, 1913, which amends the Irrigation Law approved September 18, 1908), and shall add thereto or substract therefrom, as the case may be, any resulting deficit between or surplus over, the amount expended and certified to as expended by the Commissioner of the Interior for expenses of operation and maintenance of the irrigation system during the preceding fiscal year, and the amount estimated or certified to as estimated by the Commissioner of the Interior for defraying the cost of operation and maintenance of the irrigation system during the aforesaid preceding fiscal year. The Treasurer shall then divide the amount so determined by the total number of acres computed as hereinbefore provided, and the result shall be and shall constitute the tax for acre which shall be levied during said subsequent fiscal year on all tracts supplied with water from the southern coast public irrigation system, and which in no other manner are subject to the payment of a tax to meet the cost of the said irrigation system. . . ."

Finally, to support the constitutionality of the act we may cite from the opinion of the Supreme Court of the United States in *Fallbrook Irr. Dist.* v. *Bradley*, 164 U. S. 112, 176:

". . . Assume that the only theory of these assessments for local improvements upon which they can stand is that they are imposed on account of the benefits received, and that no land ought in justice to be assessed for a greater sum than the benefits received by it, yet it is plain that the fact of the amount of benefits is not susceptible of that accurate determination which appertains to a demonstration in geometry. Some means of arriving at this amount must be used, and the same method may be more or less accurate in different cases involving different facts. Some choice is to be made, and where the fact of some benefit accruing to all the lands has been legally found, can it be that the adoption of an *ad valorem* method of assessing the lands is to be held a violation of the Federal Constitution? It seems to us clearly not. It is one of those matters of detail in arriving at the proper and fair amount and proportion of the tax that is to

be levied on the land with regard to the benefits it has received, which is open to the discretion of the state legislature, and with which this court ought to have nothing to do. The way of arriving at the amount may be in some instances inequitable and unequal, but that is far from rising to the level of a constitutional problem and far from a case of taking property without due process of law.''

``    .        .       .       .       .       .       .         .       .       .       -

At page 174:

''In the act under consideration, however, the establishment of its boundaries and the purposes for which the district is created, if it be finally organized by reason of the approving vote of the people, will almost necessarily be followed by and result in an assessment upon all the lands included within the boundaries of the district. The legislature thus in substance provides for the creation not alone of a public corporation, but of a taxing district whose boundaries are fixed, not by the legislature, but, after a hearing, by the board of supervisors, subject to the final approval by the people in an election called for that purpose. It has been held in this Court that the legislature has power to fix such a district for itself without any hearing as to benefits, for the purpose of assessing upon the lands within the district the cost of a local, public improvement. The legislature, when it fixes the district itself, is supposed to have made proper inquiry, and to have finally and conclusively determined the fact of benefits to the land included in the district, and the citizen has no constitutional right to any other or further hearing upon that question. The right which he thereafter has is to a hearing upon the question of what is termed the apportionment of the tax, i. e., the amount of the tax which he is to pay. *Paulsen* v. *Portland*, 149 U. S. 30, 41. But when as in this case the determination of the question of what lands shall be included in the district is only to be decided after a decision as to what lands described in the petition will be benefited, and the decision of that question is submitted to some tribunal (the board of supervisors in this case), the parties whose lands are thus included in the petition are entitled to a hearing upon the question of benefits, and to have the lands excluded if the judgment of the board be against their being benefited. Unless the legislature decide the question of benefits itself, the landowner has the right to be heard upon that question before his property can be taken. This, in substance, was determined by the decisions of this

court in *Spencer* v. *Merchant*, 125 U. S. 345, 356, and *Walston* v. *Nevin*, 128 U. S. 578. Such a hearing upon notice is duly provided for in this act.''

.    .    .    .    .    .    .    .    .    .

## At page 177:

''In the case of *Davidson* v. *New Orleans, supra,* the assessment, with which this court refused to interfere, was for a local improvement (reclaiming swamp lands), and by sec. 8 of the act of the Legislature of Louisiana, passed in 1858, Laws of Louisiana, 1858, 114, such an uniform assessment was levied upon 'the superficial or square foot of land situate within the draining section or district of such board' as would pay for the cost of construction. The effect of this provision was that each foot of land in the whole district paid the same sum as any other foot, although the assessment was founded upon the theory of an assessment for benefits. It was complained that the amount assessed upon plaintiff's lands was excessive, and that part of them received no benefit at all, and it was to that argument that the reply was made that it was a matter of detail so far as this court was concerned, i. e., it was not a constitutional question, and therefore was not reviewable here. 96 U. S. at page 106.

''In *Walston* v. *Nevin*, 128 U. S. 578, an assessment was laid upon lands for benefits received from construction of a local improvement, according to the number of square feet owned by the landowner. It was urged that it was not an assessment governed by the amount of benefits received, but was an absolutely arbitrary and illegal method of assessment. This court held the objection not well founded and that the matter was for the decision of the legislature, to which body the discretion was committed of providing for payment of the improvement.

''We refer to the case of *Cleveland* v. *Tripp*, 13 R. I. 59, decided in 1880, as one which treats this subject with much ability. The act provided for the construction of a sewer in the city of Providence and directed the laying of an assessment upon the abutting lands of a certain sum for each front foot and another sum for each square foot extending back 150 feet. The claim was made that such a mode of assessment did not apply the tax in proportion to the benefits received, and was unequal and unfair, and therefore unconstitutional. The court, while admitting the complaints of inequality to be well founded, yet held the act to be within the power of the legislature.

"There are some States where assessments under such circumstance as here exist and made upon an *ad valorem* basis have been held invalid, as an infringement of some provision of the state constitution, or in violation of the act under which they were levied. Counsel have cited several such in the briefs herein filed. We do not discover, and our attention has not been called to any case in this court where such an assessment has been held to violate any provision of the Federal Constitution. If it do not, this court can grant no relief.

"The method of assessment here provided for may not be the best which could have been adopted in order to accomplish the most equal and exact justice which the nature of the case permits. But none the less we are unable to say that it runs counter to any provision of the Federal Constitution, and we must for that reason hold the objection here considered to be untenable.

"An objection is also urged that it is delegating to others a legislative right, that of the incorporating of public corporations, inasmuch as the act vests in the supervisors and the people the right to say whether such a corporation shall be created, and it is said that the legislature cannot so delegate its power, and that any act performed by such a corporation by means of which the propetry of the citizen is taken from him, either by the right of eminent domain or by assessment, results in taking such property without due process of law.

"We do not think there is any validity to the argument. The legislature delegates no power. It enacts conditions upon the performance of which the corporation shall be regarded as organized with the powers mentioned and described in the act.

"After careful scrutiny of the objections to this act we are conpelled to the conclusion that no one of such objections is well taken. The judgment appealed from herein is therefore reversed and the cause remanded to the Circuit Court of the United States for the Southern District of California for further proceedings not inconsistent with this opinion."

The plea of prescription raised by the defendant should be carefully considered. The district court did not pass upon it except as has been noted.

The Treasurer tried to collect the tax. Russell & Co. filed a petition for a writ of *injunction* before the U. S. District

Court for Puerto Rico. The case had been appealed to the Circuit Court of Appeals when Congress on March 4, 1927, amended section 48 of the Organic Act, and forbade the issuance of writs to enjoin collection of taxes. The proceeding pending in the Circuit Court of Appeals was dismissed —*Gallardo* v. *Havemeyer,* 21 F. (2d) 1012—on November 3, 1927.

On April 23, 1928, Congress passed Act No. 302, which provided that all taxes which had been subject to *injunction* proceedings should be collected "by a suit at law instead of by attachment, embargo, distraint, or any other form of summary administrative proceeding. Notwithstanding the provisions of any existing statute of limitations any such suit may be instituted at any time not later than one year after the approval of this act."

This last sentence does not mean, as the appellee contends, that the suits had to be filed before April 23, 1929. The effect of the statute was to grant an extra term of one year to the Treasurer to collect by a suit taxes which under the ordinary statutes had prescribed by reason of the *injunction* proceeding.

The act which establishes the special tax has no provision similar to the Income Tax Act, and others, providing that the Treasurer has to collect within a certain time. If Congress had not granted that year of grace to the Treasurer he might have been unable to collect some other taxes, but not this one.

We hold, therefore, that the action had not prescribed.

The judgment of the District Court of San Juan should be reversed and in lieu thereof a new one entered, ordering Russell & Co. to pay to the plaintiff the sums specified in the complaint.